UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DONALD HEIMSTAEDT and TODD KORTE,        CIVIL ACTION NO. 07 CV 9389 (JSR)

Plaintiffs,

-against-

PREM.AIR NEW YORK, LLC, PREM.AIR
GROUP OF NEW YORK, LLC, PREM.AIR
GROUP, LLC, MCQUAY NEW YORK, LLC,
GEORGE KOUTSSOS, ERIC BERKOWITZ,
MCQUAY NEW YORK, LLC 401(K) PROFIT
SHARING PLAN, and XYZ TRUSTEES OF THE
MCQUAY NEW YORK, LLC 401(K) PROFIT
SHARING PLAN,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS CERTAIN COUNTS OF
THE FIRST AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6) AND 9(b)**

---

Of Counsel and on the Brief:

    Randi W. Kochman

On the Brief:

    Adam J. Sklar

44630/0001-1512295v1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................................1

STATEMENT OF RELEVANT FACTS .......................................................................................4

LEGAL ARGUMENT ....................................................................................................................7

   I.    DEFENDANTS CANNOT SATISFY THE STANDARD FOR A MOTION TO
        DISMISS PURSUANT TO RULE 12. ...............................................................................7

   II.   DEFENDANTS' MOTION TO DISMISS COUNT IV FOR BREACH OF
        CONTRACT AGAINST PREM.AIR GROUP, LLC SHOULD BE DENIED. ................8

   III.  DEFENDANTS' MOTION TO DISMISS COUNTS VI AND VII FOR
        QUANTUM MERUIT AND UNJUST ENRICHMENT MUST BE DENIED. ...............9

   IV.  DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' PIERCING THE
        CORPORATE VEIL CLAIM (COUNT VIII) SHOULD BE DENIED. ........................12

   V.   DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FRAUD
        CLAIM (COUNT V) SHOULD BE DENIED. ...............................................................16

        A.    Plaintiffs' Fraud Claim Is Sufficiently Particular Pursuant To
               Fed. R. Civ. P. 9(B) Or, In The Alternative, The Additional Facts
               Set Forth In Plaintiffs' Affidavits Accompanying This Motion Provide
               Sufficiently Particular Facts For The Claims To Proceed Either
               Through Further Amendment To The Complaint Or Otherwise. .........................16

        B.    Plaintiffs' Fraud Claim Exists Separately From Their Breach of Contract Claim.18

   VI.  IN THE EVENT THAT DEFENDANTS' MOTION  TO DISMISS IS GRANTED,
        PLAINTIFFS SHOULD  BE GRANTED LEAVE TO FILE A SECOND
        AMENDED COMPLAINT. ...............................................................................................20

CONCLUSION ............................................................................................................................22

i

**TABLE OF AUTHORITIES**

### CASES            PAGES

Alter v. Bogorician, 1997 WL 691332 at *13 ............................................................................12

Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130 (2d Cir. 1997)......................................13

American Protein Corp. v. A.B. Volvo, 844 F.2d 56 (2d Cir. 1988)............................................14

Bower v. Weisman, 650 F. Supp. 1415 (S.D.N.Y. 1986)............................................................18

Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 176 N.Y.S.2d 259 (N.Y. 1958) ................18

Citicorp Intl. Trading Co., Inc. v. Western Oil & Refining Co., Inc., 771 F. Supp. 600 (S.D.N.Y.
  1991) ................................................................................................................7, 12,13

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382 (N.Y. 1987) ..............................10

Cortec Indus. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)............................................20

Culver v. Merrill Lynch & Co., No. 94 Civ. 8124, 1995 WL 422203 (S.D.N.Y. July 17, 1995) .11

David v. Glemby Co., Inc., 717 F. Supp. 162 (S.D.N.Y. 1989) ....................................................14

Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................12

EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508 (S.D.N.Y. 2005)..............12

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168 (2d Cir.
  2004) .....................................................................................................................................7

First Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit, 737 N.Y.S.2d 694
  (N.Y. App. Div. 2002) ........................................................................................................10

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)................................................................7

Goldblatt v. Englander Communications, LLC, 2007 WL 148699 6 (S.D.N.Y. 2007) ...............12

In re Gilbraltar Amusements, Ltd., 291 F.2d 22 (2d Cir. 1961) ...................................................13

H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989).........................................................7

In re InSITE Services Corp., LLC, 287 B.R. 79 (Bankr. S.D.N.Y. 2002).....................................14

44630/0001-1512295v1

Impulse Marketing Group, Inc. v. National Small Business Alliance, Inc., 2007 WL 1701813, at 10 (S.D.N.Y. June 12, 2007) (emphasis added)] ............................................................11

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) .......................................................................8

Las Olas  Investors Group LLC v. The Las Olas Tower Co., Inc., 2008 WL 80741, at 2-3 (S.D.N.Y. Jan. 2, 2008)...........................................................................................................9

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986)..............................................................................20

Morris v. New York State Dep't of Taxation and Finance, 82 N.Y.2d 135 (1993) ......................13

Neilsen Media Research, Inc. v. Microsystems Software, Inc., No. 99 Civ. 10876, 2002 WL 31175223 (S.D.N.Y. Sept. 30, 2002).................................................................................11

Olsen v. Pratt & Whitney Aircraft Div. of United Techs. Corp., 136 F.3d 273 (2d Cir. 1998) ....20

R.H. Damon & Co. v. Softkey Software Prods. Inc., 811 F. Supp. 986 (S.D.N.Y. 1993) ............19

Republic of Philippines v. Marcos, 640 F. Supp. 737 (S.D.N.Y. 1986)........................................14

In re Scottish Re Group Securities Litigation, 524 F. Supp. 2d 370 (S.D.N.Y. 2007)..................20

Sergeants Benevolent Assoc. Annuity Fund v. Renck, 796 N.Y.S.2d 77 (N.Y. App. Div. 2005) 10

Shlang v. Bear's Estates Development of Smallwood, N.Y., Inc., 599 N.Y.S.2d 141 (N.Y. App. Div. 1993) ........................................................................................................................18

Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87 (2d Cir. 2001)..................16

TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335 (1998) ....................................................13

Walter E. Heller and Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984).................14

XPedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 399 F. Supp. 2d 375 (S.D.N.Y. 2005) ........................................................................................................................20

## STATUTES AND OTHER AUTHORITIES

Restatement (First) of Torts, § 525, at 59 (1938) ........................................................................18

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1 et seq ....................................5

Fed. R. Civ. P. 8(a) ..............................................................................................................2, 8, 12

Fed. R. Civ. P. 8(d), 8(e)................................................................................................9

Fed. R. Civ. P. 9(b) ...............................................................................................12, 16

Fed. R. Civ. P. 12(b)(6).....................................................................................9, 11, 20

Fed. R. Civ. P. 15(a) ........................................................................................3, 18, 20

44630/0001-1512295v1

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Plaintiffs, Donald Heimstaedt ("Heimstaedt") and Todd Korte ("Korte") (collectively, "Plaintiffs"), in opposition to the motion submitted by Defendants, Prem.Air Group of New York, LLC ("Prem.Air" or the "Company"), Prem.Air Group, LLC, George Koutsos ("Koutsos") and Eric Berkowitz ("Berkowitz"), to dismiss certain Counts of the First Amended Complaint. (Defendants shall hereinafter be referred to collectively as "Defendants", and Koutsos and Berkowitz shall be referred to collectively as the "Individual Defendants"). For the reasons set forth herein, Defendants' motion should be denied in its entirety.

Defendant, Prem.Air Group, LLC's motion to dismiss Count IV of the First Amended Complaint for breach of contract should be rejected. In fact, Defendants have operated their Prem.Air entities jointly and collectively and, as per Plaintiffs' allegations, the nature of the relationship between Prem.Air, Prem.Air Group, LLC and Prem.Air New York, LLC (collectively, the "Prem.Air Companies") is, at best, unclear. These entities all operated out of a single Long Island City location and had a commonality of ownership at all relevant times. Moreover, Prem.Air Group, LLC was in existence for nearly a year prior to Heimstaedt's separation, and Plaintiffs are uncertain as to this Company's relationship to Prem.Air and suspect that it has benefitted from the commissions due and owing to Plaintiffs. As no discovery has yet been taken on this issue, and given the interrelationship between these entities, Plaintiffs should not be denied the opportunity to ascertain facts to determine the precise nature of the relationship and whether Prem.Air Group, LLC has succeeded to the rights and obligations of Prem.Air, including this entity's admitted contractual obligations to Plaintiffs. Accordingly, this aspect of the motion should be denied. (See Point II, infra.)

Defendants' motion to dismiss Plaintiffs' quantum merit and unjust enrichments claims (Counts VI and VII of the First Amended Complaint) is likewise without merit. Defendants erroneously attempt to convince the Court that quasi-contract claims cannot be plead in a case where a breach of contract claim has been asserted relating to the same subject matter. Their argument is contradicted by the Federal Rules of Civil Procedure, which permit pleading in the alternative and inconsistently. At the pleading stage of the litigation, in the absence of a written contract spelling out all terms and conditions of the parties' agreement, and particularly where, as here, Defendants dispute the terms of compensation alleged by Plaintiffs, Plaintiffs are permitted to plead contract and quasi-contract claims in the alternative and this aspect of Defendants' motion should be denied. (See Point III, infra.)

Defendants' motion to dismiss Count VIII of the First Amended Complaint, which alleges a claim seeking to pierce the corporate veil, should also be denied in its entirety. In fact, the Individual Defendants have only brought this motion in an attempt to shield themselves from discovery into their personal affairs, which is very likely to reveal their wrongdoing. Pursuant to the liberal pleading standards of Rule 8(a), which are applicable to this claim as well as Plaintiffs' affidavits submitted herewith, Plaintiffs have asserted sufficient allegations regarding the Individual Defendants' personal use of Prem.Air and its funds, and their misuse of the corporate form to survive this motion to dismiss. Accordingly, Defendants' motion to dismiss Count VIII of the First Amended Complaint should be denied. (See Point IV, infra.)

Defendants' motion to dismiss Plaintiffs' fraud claim (Count V of the First Amended Complaint) should also be denied. Plaintiffs have pled fraud with sufficient specificity to withstand a motion to dismiss. Plaintiffs' accompanying affidavits further elucidate the details of their claim. Further, Plaintiffs do more than merely restate their breach of contract claim.

2

Rather, Plaintiffs confirm that they were fraudulently induced into employment by Defendants not only when first hired, but also over a period of years when Defendants fraudulently induced Plaintiffs to continue their employment by repeatedly misrepresenting their present intention to ensure that Plaintiffs were paid all commissions due and owing.  (See Point V, infra.)

Based on Plaintiffs' well-pleaded allegations, Defendants' motion should be denied.  In the event that the Court determines that the allegations in the First Amended Complaint are lacking, which Plaintiffs strongly deny, the Court should grant Plaintiffs leave to file a Second Amended Complaint pursuant to the liberal standards of Rule 15(a).  (See Point VI, infra.)

3

## STATEMENT OF RELEVANT FACTS[1]

### Background

This action involves Plaintiffs' claims to recover substantial commissions due to Plaintiffs resulting from their sales efforts for Defendants over many years.  In addition to their claims that Defendants violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1 et seq. (ERISA) by failing to make designated and required 401(k) contributions, Plaintiffs have also brought claims under the New York Labor Law and for breach of contract, fraud, quantum meruit, and unjust enrichment, as well as a claim seeking to pierce the corporate veil.  (See First Amended Complaint.)

Heimstaedt began employment with Prem.Air in December 1999 and was employed by the Company until his separation on March 29, 2007.  Korte began employment with Prem.Air in June 1999 and worked for the Company until his resignation in January 2006.  During all relevant times, both Plaintiffs were paid on a purely commissioned basis.  While Plaintiffs were paid by Prem.Air (formerly known as McQuay New York, LLC), Defendants' termination of Heimstaedt reflects that he was employed by Prem.Air New York, LLC.  (See April 2, 2007 letter from Koutsos to Heimstaedt attached to the Heimstaedt Aff. as Exhibit "A").  All of the Prem.Air companies operated out of the same Long Island City location and, upon information and belief, up until Berkowitz's separation from the Prem.Air Companies in 2007, Koutsos and Berkowitz have, at all relevant times, been owners, officers and directors of all of these companies.

---

[1] The within Statement of Relevant Facts is based on the First Amended Complaint and accompanying Affidavit of Donald Heimstaedt with attached exhibit ("Heimstaedt Aff.") and Affidavit of Todd Korte ("Korte Aff.").

4

**Defendants Fraudulently Induce Plaintiffs to Continue Their Employment**

When Defendants hired Plaintiffs, the Individual Defendants promised Plaintiffs that they would receive a 50/50 split of: (1) all commissions on McQuay equipment and service sales; and (2) profits on all Buy/Sells Orders (where the Company resold purchased equipment and services at a marked-up price). When Plaintiffs began to receive their monthly compensation statements, however, they noticed that they were not receiving all of the commissions promised them.

Plaintiffs repeatedly went to the Individual Defendants at their office and confronted them about the lack of payment. For years, the Individual Defendants acknowledged to the Plaintiffs that they were owed commissions and assured them that it would all be "straightened out" and not to worry. The unpaid commissions continued to accrue, however, and Plaintiffs' accounts were never "straightened out." The Individual Defendants continued to string the Plaintiffs along with their promises and assurances until Plaintiffs left Defendants' employ. Once they were out the door, the Individual Defendants ignored the Plaintiffs' inquiries as to the status of the payments due them, thus prompting this lawsuit.

Plaintiffs had no reason to doubt the promises of the Individual Defendants that they would work in good faith to ensure that Plaintiffs were paid what was owed them. Instead, the Individual Defendants took advantage of Plaintiffs' highly successful sales careers and benefitted personally by never compensating Plaintiffs in full for their work. But for the Individual Defendants' repeated misrepresentations of their intent to fully compensate Plaintiffs, Plaintiffs would have left Defendants' employ much earlier to pursue other more lucrative opportunities. (See Korte and Heimstaedt Affidavits.).

44630/0001-1512295v1

**The Individual Defendants Use of Prem.Air as Their Personal Piggy Banks**

      During Plaintiffs' employment with Defendants, the Individual Defendants had a regular and consistent practice of using the Prem.Air Companies interchangeably and failing to follow the corporate form.  Specifically, although Prem.Air consistently failed to pay Plaintiffs and other salespeople commissions due and owing, the Individual Defendants regularly justified this failure by claiming that the Company did not have sufficient funds to pay commissions.

      At the same time, as reflected in the Heimstaedt and Korte Affidavits, it was well-known within the Company that the Individual Defendants were using corporate funds for their personal use.  In particular, based on their discussions with former Prem.Air controllers and accountants, it is Plaintiffs' understanding that Koutsos used corporate funds to pay for his children's private education.  Moreover, Koutsos used Prem.Air funds to construct the Long Island City building in which he had an ownership interest.  Koutsos also regularly moved money from the Prem.Air accounts to his personal account in Greece.  It is Heimstaedt's understanding that in late 2006 Koutsos transferred $400,000.00 out of the Company to his personal account in Greece.  (See Heimstaedt Aff.)  Moreover, in or about the past few years, Prem.Air received $500,000 for a large job it did for Con Edison and the check was deposited in Koutsos's personal account rather than that of Prem.Air.  Finally, Plaintiffs understand that the Individual Defendants used the Company's corporate credit card to pay their personal expenses on a monthly basis.  (See Heimstaedt and Korte Affs.)

6

**LEGAL ARGUMENT**

I.    **DEFENDANTS CANNOT SATISFY THE STANDARD FOR
      A MOTION TO DISMISS PURSUANT TO RULE 12.**

It is well established that a motion to dismiss pursuant to Rule 12 may be granted "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Citicorp Intl. Trading Co., Inc. v. Western Oil & Refining Co., Inc., 771 F. Supp. 600 (S.D.N.Y. 1991); see H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). "[T]he Court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true." Citicorp, 771 F. Supp. at 602. Stated differently, "the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

As set forth herein, Plaintiffs do establish legal claims on which they are entitled to take discovery and these claims should not be dismissed at this early stage, without permitting the parties to engage in meaningful discovery.

## II.    DEFENDANTS' MOTION TO DISMISS COUNT IV FOR BREACH OF CONTRACT AGAINST PREM.AIR GROUP, LLC SHOULD BE DENIED.

The confusion surrounding the relationship and role of the Prem.Air entities is evident. As Defendants correctly state, in Plaintiffs' Complaint, Plaintiffs allege that Heimstaedt was employed by Prem.Air New York, LLC.  Heimstaedt reasonably concluded so based on the April 2, 2007 termination letter sent to him, which indicates that his employment was with Prem.Air New York LLC.  Defendants, however, claim that he was, in fact, employed by Prem.Air Group of New York, LLC.  Accordingly, even this basic fact of the identity of Plaintiffs' employer is not conclusively established.

As for the new Prem.Air Entity, Prem.Air Group, LLC, which was formed on May 21, 2006, its relationship with the other Prem.Air entities is unclear at this early stage in the litigation and Plaintiffs' allegations as to this entity's wrongdoing are sufficient at this stage.  See Rules 8(a) and 8(e) ("pleadings must be construed so as to do justice"); see also, Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986) (pleadings only required to provide sufficient information to allow defendants to respond and defend).  In fact, Heimstaedt was employed by the Prem.Air Companies until March 29, 2007, almost a full year after the formation of Prem.Air Group, LLC.  Because it is unclear whether Prem.Air Group, LLC succeeded to the obligations of the other Prem.Air companies regarding, among other things, the payment of commissions to Plaintiffs, and because Defendants themselves are not clear on this issue, Plaintiffs should be permitted to take discovery on the role of this Prem.Air entity.  Accordingly, Defendants' motion to dismiss this claim against Prem.Air Group, LLC should be denied.

44630/0001-1512295v1

### III.    DEFENDANTS' MOTION TO DISMISS COUNTS VI AND VII FOR QUANTUM MERUIT AND UNJUST ENRICHMENT MUST BE DENIED.

Defendants incorrectly argue that Plaintiffs may not assert quasi-contract claims while at the same time asserting a claim for breach of contract.  To support their argument, Defendants cite to several cases that discuss the principal that a plaintiff may not recover on a quasi-contract where an express contract exists governing the same subject matter.  Defendants' argument in the context of this Rule 12(b)(6) motion, however, is misplaced.

The Federal Rules of Civil Procedure specifically allow for parties to plead in the alternative.  Rule 8(d)(2) provides, "A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Rule 8(d)(3) provides, "A party may state as many separate claims or defenses as it has, regardless of consistency."  Thus, Defendants' statement that Plaintiffs have elected their remedy by making a claim for breach of contract is without any foundation in the law and is directly contradicted by the foregoing Rule.

Plaintiffs' right to plead alternatively in contract and quasi-contract is particularly appropriate in this case.  Here, Plaintiffs entered into oral employment agreements with one or more of the Defendants.  The terms were not identified in a written contract signed by the parties.  Instead, Plaintiffs allege entitlement to certain commission payments based on a formula that Defendants apparently dispute.  In the event the finder of fact ultimately determines that there was no meeting of the minds as to certain relevant disputed compensation terms, then clearly Plaintiffs should be permitted to proceed with their quasi-contract claims.  See Las Olas

9

Investors Group LLC v. The Las Olas Tower Co., Inc., 2008 WL 80741, at *2-3 (S.D.N.Y. Jan.

2, 2008) (unjust enrichment claim permitted where dispute as to existence of contract and terms).

      Thus, Defendants' reliance on Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d

382, 389 (N.Y. 1987) is misplaced, as there, the Court found that a quasi-contract claim may not

be permitted "where the suing party has fully performed on a valid **written agreement**, the

**existence of which is undisputed** and the scope of which **clearly covers the dispute** between

the parties" and where, in that case, "the relationship between the parties was defined by a

written contract, **fully detailing all applicable terms and conditions**…." (emphasis added).

See First Frontier Pro Rodeo Circuit Finals LLC v. PRCA First Frontier Circuit, 737 N.Y.S.2d

694, 695 (N.Y. App. Div. 2002) (distinguishing Clark-Fitzpatrick and reversing summary

judgment on unjust enrichment claim where "there was no valid and enforceable written contract

in existence").

      Incredibly, in the first case cited by Defendants, Sergeants Benevolent Assoc. Annuity

Fund v. Renck, 796 N.Y.S.2d 77 (N.Y. App. Div. 2005), in seeking to dismiss Plaintiffs' quasi-

contract claims, the court found just the opposite of what Defendants claim. Defendants

apparently rely on the **dissenting** opinion in that case. See id. at 86-87.[2] In the majority opinion,

the court reversed the trial court's dismissal **at summary judgment** of the plaintiff's unjust

enrichment claim. While recognizing a party may not recover on an unjust enrichment theory

when there exists "a valid and enforceable written contract," it held that "the unjust enrichment

claim here, based on the [defendants]' retention of funds to which they were not entitled, is

predicated on conduct not covered by the contract." As in Sergeants, Defendants here also

---

[2] Defendants even pinpoint cite to a quote from that case on page 8 of their brief, which purports to be attributable to the majority a opinion (page 79), but actually comes from the dissenting opinion (page 87).

10

retained certain commissions due to the plaintiff.  Not only is there no written contract specifying

the terms between the parties, but Plaintiffs' quasi-contract claims may not be inconsistent with

their contract claim.

This Court's recent analysis of a Rule 12(b)(6) motion seeking dismissal of quasi-

contract claims cogently confirms the proprietary of Plaintiffs' alternative claims:

> Next, [Defendant] argues that Plaintiff's quasi-contract claims
> must be dismissed, because it would be unfair to permit a party to
> recover twice – once for a contract claim and again for a quasi-
> contract claim.  **Although Plaintiff cannot recover twice, it can
> plead contract claims and, in the alternative, it can plead
> quasi-contract claims**.  See Neilsen Media Research, Inc. v.
> Microsystems Software, Inc., No. 99 Civ. 10876, 2002 WL
> 31175223, at *7 n.2 (S.D.N.Y. Sept. 30, 2002) ("It is axiomatic
> that … a plaintiff may plead quasi-contract claims in the
> alternative to a contract claim.").  "**While a plaintiff may not
> recover under both contract and quasi-contract, he is entitled
> to plead and present two alternative theories**."  Culver v. Merrill
> Lynch & Co., No. 94 Civ. 8124, 1995 WL 422203, at *6 n. 4
> (S.D.N.Y. July 17, 1995).  Because a motion under Rule 12(b)(6)
> tests only the sufficiency of the pleadings, DCM's argument is
> rejected.
>
> [Impulse Marketing Group, Inc. v. National Small Business
> Alliance, Inc., 2007 WL 1701813, at *10 (S.D.N.Y. June 12, 2007)
> (emphasis added)]

In short, at this stage of the litigation, Plaintiffs' alternate theories are entirely proper

under the facts of this case, and Defendants do not, and can not, present any law demonstrating

otherwise.

11

IV.    **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' PIERCING THE CORPORATE VEIL CLAIM (COUNT VIII) SHOULD BE DENIED.**

As Defendants' submission fails to acknowledge, a claim seeking to pierce the corporate veil is to be "judged by the liberal notice pleading standards of Fed. R. Civ. 8(a) rather than the more stringent pleading standards of Fed. R. Civ. P. 9(b)." Goldblatt v. Englander Communications, LLC, 2007 WL 148699 *6 (S.D.N.Y. 2007) (citing Alter v. Bogorician, 1997 WL 691332 at *13 (holding that because one need not allege fraud to pierce the corporate veil a plaintiff's allegations are judged by the liberal notice pleading standards of Fed. R. Civ. P. 8(a))); see also CitiCorp. Int'l Trading Co., v. Western Oil & Refining Co., 771 F. Supp. 600, 608 (S.D.N.Y. 1991).

Because the underlying claims on which Plaintiffs seek to pierce the corporate veil are not based on Defendants' fraud, Rule 8(a) should apply. See Dolco Inv., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 272 (S.D.N.Y. 2007). When not based on fraud, veil-piercing claims are subject to Fed. R. Civ. P. 8(a) pleading requirements, which require only "a short and plain statement of the claim showing the pleader is entitled to relief." Id. [citations omitted.] (quoting EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005)). See Citicorp. Int'l, supra, p. 608 (denying motion to dismiss veil-piercing claim).

Plaintiffs satisfy these liberal pleading standards. In order to establish a piercing the corporate veil claim under New York law, a party must establish the following:

> (i)    that the owner exercised complete domination over the corporation with respect to the transaction at issue; and

> (ii)    that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil.

44630/0001-1512295v1

Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997) (citing Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135 (N.Y. 1993)).

It is appropriate to pierce the corporate veil where the corporation is used "to defeat public convenience, justify wrong, protect fraud or defend crime."  In re Gilbraltar Amusements, Ltd., 291 F.2d 22, 24 (2d Cir. 1961).  Factors to be considered in assessing whether there has been "complete domination" include whether the individual defendants have allegedly engaged in personal use of corporate funds.  See Citicorp, 771 F. Supp. at 608.  Because of Plaintiffs' allegations that Defendants' domination resulted in harm to them, TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335 (1998), cited by Defendants and holding that Plaintiffs failed to show resulting fraud or wrong is misplaced.

Plaintiffs have, in fact, satisfied the liberal pleadings standards of Rule 8(a).  Plaintiffs allege in Count VIII of the First Amended Complaint that the Individual Defendants "failed to maintain corporate formalities and comingled assets as between themselves and the various entities controlled by one or both of them, as well as among and between those entities controlled by one or both of them."  (See First Amend. Complaint, ¶ 74).  Moreover, Plaintiffs allege that "Koutsos and Berkowitz used the Company's funds for their own personal use and for the use of entities controlled by one or both of them."  (See First Amended Complaint, ¶ 75.) These allegations satisfy Plaintiffs' pleading obligations.

Moreover, although not necessary, in opposition to this motion, Plaintiffs have submitted the Affidavits of Heimstaedt and Korte, which further confirm Plaintiffs' allegations that the Individuals Defendants "misused the corporate form for [their] personal ends so as to commit a wrong or injustice against Plaintiffs."  See Morris v. New York State Dep't of Taxation and Finance, 82 N.Y. 2d 135, 143 (1993).  Both Plaintiffs have made clear that it is their

13

understanding that the Individual Defendants used the Company's corporate credit card to pay their personal expenses on a monthly basis.  Moreover, Koutsos paid for his children's school and for the construction of the Prem.Air Companies' Long Island City building, in which he apparently has some ownership interest, by using Prem.Air funds.  He is also believed to have sent Prem.Air funds directly to his personal bank account in Greece.  Finally, Plaintiffs allege that Koutsos had money paid by Con Edison to Prem.Air sent directly to Koutsos' personal account.  (See Heimstaedt & Korte Affs.).  The Individual Defendants' attempt to secure a dismissal of this claim is clearly rooted in their concern that a review of their personal accounts will reveal their wrongdoing.

In light of these allegations, dismissal of this claim prior to the taking of any discovery on this issue is inappropriate.  See Republic of Philippines v. Marcos, 640 F. Supp. 737 (S.D.N.Y. 1986) ("As to the appropriateness of piercing the corporate veils, such questions depend on the facts and are obviously premature prior to discovery.").  Any dismissal, even if eventually warranted, which Plaintiffs vehemently dispute, should be reserved for the summary judgment stage.  "[W]hen raised on motions to dismiss or even for summary judgment, courts have been reluctant prematurely to dismiss a cause of action alleging corporate veil piercing because of the intensely factual nature of such a claim."  In re InSITE Services Corp., LLC, 287 B.R. 79, 98 (Bankr. S.D.N.Y. 2002) (citations omitted).  Similarly, the issue of corporate disregard is generally submitted to the jury.  American Protein Corp. v. A.B. Volvo, 844 F.2d 56, 59 (2d Cir. 1988) (citing Walter E. Heller and Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984)); see also David v. Glemby Co., Inc., 717 F. Supp. 162, 166 (S.D.N.Y. 1989) (recognizing corporate disregard is generally submitted to the jury).

14

In short, given Plaintiffs' numerous allegations regarding Defendants' disregard of the corporate form and use of the Prem.Air Companies for their personal use, which has resulted in Plaintiffs' injuries, dismissal of their veil-piercing claim would be premature and inappropriate at this stage of the litigation.  Rather, Plaintiffs should be permitted to take discovery on this issue and Defendants' motion should be denied.

44630/0001-1512295v1

V.    **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'**
      **FRAUD CLAIM (COUNT V) SHOULD BE DENIED.**

Defendants move to dismiss Plaintiffs' fraud claim on the basis that it was allegedly not

pled with sufficient specificity pursuant to Rule 9(b) and that the claim allegedly does not exist

independent of Plaintiffs' breach of contract claim.  As discussed below, Plaintiffs' fraud claim

is sufficiently pled and is independent of their breach of contract claim.  Should this Court

determine that Plaintiffs' claim is insufficiently detailed to be sustainable, Plaintiffs respectfully

request that this Court grant leave to Plaintiffs to file a Second Amended Complaint setting forth

the additional factual allegations related in the accompanying Affidavits of the Plaintiffs, or

alternatively allowing the Affidavits to supplement the First Amended Complaint without need

for an amendment of the pleadings.

      A.    **Plaintiffs' Fraud Claim is Sufficiently Particular**
           **Pursuant to Fed. R. Civ. P. 9(b) or, in the alternative,**
           **the Additional Facts Set Forth in Plaintiffs' Affidavits**
           **Accompanying this Motion Provide Sufficiently**
           **Particular Facts for the Claims to Proceed Either**
           **Through Further Amendment to the Complaint or**
           **Otherwise.**

"New York common law fraud is defined as a representation of fact, which is untrue and

either known by defendant to be untrue or recklessly made, which is offered to deceive and to

induce the other party to act upon it, and which causes injury."  Suez Equity Investors, L.P. v.

Toronto-Dominion Bank, 250 F.3d 87, 104 (2d Cir. 2001).  Rule 9(b) provides that when

alleging such claims, a party must state with particularity the circumstances constituting fraud.

Plaintiffs here identify with sufficient particularity the circumstances that constitute the fraud

against them.

In their Complaint, Plaintiffs state that when they each were hired, Defendants orally

represented that they would receive commissions pursuant to a certain formula, which would be

paid promptly.  Plaintiffs further state that Defendants made such promises knowing they did not intend to abide by what they were promising.  Plaintiffs relied on the representations by continuing to work for Defendants, and, as a result, suffered damages.  Thus, Plaintiffs set forth the who, when, where and other particularities of the alleged fraud – and certainly sufficient facts to give Plaintiffs "fair notice" of the claim against them.

Plaintiffs' accompanying affidavits further elucidate, to the extent necessary, the circumstances underlying the fraud claim.  In particular, as Plaintiffs began to receive their compensation statements, they noticed that they were not receiving all of the commissions promised them.  Plaintiffs repeatedly went to the Individual Defendants at their office and confronted them about the lack of payment.  For years, the Individual Defendants acknowledged to the Plaintiffs that they were owed commissions and assured them that it would all be "straightened out" and not to worry.  Needless to say, the unpaid commissions continued to add up and Plaintiffs' accounts were never "straightened out."  The Individual Defendants continued to string the Plaintiffs along until Plaintiffs left Defendants' employ.  Once they were out the door, the Individual Defendants ignored the Plaintiffs' inquiries as to the status of their non-payment, thus prompting this lawsuit.  Plaintiffs had no reason to doubt the promises of the Individual Defendants that they would work in good faith to make sure Plaintiffs were paid what was owed them.  Instead, the Individual Defendants took advantage of the Plaintiffs' highly successful sales careers and benefitted personally by never compensating Plaintiffs in full for their work.  But for the Individual Defendants' repeated misrepresentations of their intent to fully compensate Plaintiffs, Plaintiffs would have left Prem.Air earlier to pursue other, more lucrative opportunities.  (See Heimstaedt and Korte Affidavits.)

17

Plaintiffs respectfully request that in the event this Court finds that their fraud claim was not pled with the requisite Rule 9(b) specificity, they be granted leave to file a Second Amended Complaint detailing the allegations set forth in their Affidavits as summarized in the foregoing paragraph.  See Rule 15(a) ("leave shall be freely given when justice so requires") and Point VI, infra.

**B.    Plaintiffs' Fraud Claim Exists Separately From Their Breach of Contract Claim.**

In Bower v. Weisman, 650 F. Supp. 1415, 1422 (S.D.N.Y. 1986) (citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 176 N.Y.S.2d 259 (N.Y. 1958)), this Court recognized  that New York law provides for "a cause of action in fraud… when one represents that he intends to perform a contract while knowing, at the time the representation is being made, that the statement is false and that he in fact intends to do no such thing."  As set forth above, Plaintiffs' claim of fraud is, similarly, based on Defendants' representations regarding Plaintiffs' compensation, both at the commencement of their employment and then continuously thereafter for several years, while Defendants never had a present intention of actually fulfilling their payment obligations to Plaintiffs.  As the New York Court of Appeals noted in Channel Master, "[O]ne 'who fraudulently makes a misrepresentation of… intention… for the purpose of inducing another to act or refrain from action in reliance thereon in a business transaction' is liable for the harm caused by the other's justifiable reliance upon the misrepresentation."  Id. at 262 (quoting Restatement (First) of Torts, § 525, at 59 (1938)).  See also Shlang v. Bear's Estates Development of Smallwood, N.Y., Inc., 599 N.Y.S.2d 141 (N.Y. App. Div. 1993) (holding that a party may allege breach of contract and fraud in inducing that contract when the misrepresentations are, among other things, promises to perform under the contract "made with a present, albeit undisclosed, intent not to perform them.").  By not only initially misrepresenting

18

their present intention to make payment to Plaintiffs pursuant to the commission agreement, but by then continuously making additional misrepresentations through the course of their employment relationship, Defendants cannot argue, as they do, that this is nothing more than a claim for "fraudulent performance of the contract."

Furthermore, Plaintiffs seek damages under their fraud claim that are not available under their breach of contract claim.  See R.H. Damon & Co. v. Softkey Software Prods. Inc., 811 F. Supp. 986, 992 (S.D.N.Y. 1993) (finding that a fraud claim may co-exist with a breach of contract claim where plaintiffs "allege that they sustained damages in addition to those they could have anticipated in the event of a breach.").  Plaintiffs are seeking damages incurred as a result of continuing to work for Defendants in reliance on the Individual Defendants' continued misrepresentations and assurances of payment, rather than taking advantage of other lucrative business opportunities that may have been available to them.  Not only were Plaintiffs owed unpaid commissions by Defendants, but they were deprived of additional income by not commencing other opportunities earlier, which they would have done had they not relied on the Individual Defendants' misrepresentations.

For all the foregoing reasons, Plaintiffs respectfully submit that Defendants motion to dismiss the fraud claim should be denied.

19

**VI.    IN THE EVENT THAT DEFENDANTS' MOTION
TO DISMISS IS GRANTED, PLAINTIFFS SHOULD
BE GRANTED LEAVE TO FILE A SECOND
AMENDED COMPLAINT.**

Rule 15(a) provides that in connection with an application to the Court for leave to file an

amended pleading "leave shall be freely given when justice so requires," which determination is

reserved to the Court's "sound discretion". In re Scottish  Re Group Securities Litigation, 524 F.

Supp.2d 370, 387 (S.D.N.Y. 2007).  "It is the usual practice upon granting a motion to dismiss to

allow leave to replead." Id. at 378-88 (quoting Cortec Indus. v. Sum Holding L.P., 949 F.2d 42,

48 (2d Cir. 1991)).  Where a valid claim might be stated when the pleading is liberally read, then

upon granting a Rule 12(b)(6) motion, the Court should consider granting a dismissal without

prejudice.  Id. at 388.  "In particular, regarding claims of fraud, '[p]laintiffs whose complaints

are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their

complaint.'"  Ibid. (quoting Olsen v. Pratt & Whitney Aircraft Div. of United Techs. Corp., 136

F.3d 273, 276 (2d Cir. 1998)); see also Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986)

(regarding right to re-plead fraud claim dismissed pursuant to Rule 9(b)).  Providing a party with

the ability to amend under these circumstances furthers the principle that the law favors the

resolution of disputes on their merits.  See XPedior Creditor Trust v. Credit Suisse First Boston

(USA) Inc., 399 F. Supp.2d 375, 379 (S.D.N.Y. 2005).  "As a general rule, however, leave

should only be denied for reasons such as undue delay on the part of the moving party, bad faith,

repeated failure to cure deficiencies in pleading, undue prejudice or futility of the amendment."

Ibid.

Plaintiffs respectfully request that in the event this Court finds that their fraud claim was

not pled with the requisite Rule 9(b) specificity, or that their veil piercing or fraud claims

otherwise fail to state a claim, that these claims be dismissed without prejudice and Plaintiffs be

20

granted leave to file a Second Amended Complaint reciting the relevant allegations contained in the accompanying Affidavits.  As this matter is in its infancy, there will be no undue delay in allowing such an amendment and Defendants will not be prejudiced by the amendment. Plaintiffs aver their claims in good faith and have not yet attempted to cure any deficiencies in their pleadings (the First Amended Complaint was filed merely to add the veil piercing claim). As for futility, if the Court deems the allegations set forth in Plaintiffs' affidavits sufficient to state the relevant claims, then clearly the amendments would not be futile.

21

## CONCLUSION

Based upon the foregoing facts and authorities, Plaintiffs, Donald Heimstaedt and Todd Korte, respectfully request that the Court deny in full Defendants' motion to dismiss certain counts of the First Amended Complaint.

DATED:  New York, New York                    Respectfully submitted,
             March 6, 2008

                                              COLE, SCHOTZ, MEISEL,
                                              FORMAN & LEONARD, P.A.
                                              A Professional Corporation
                                              Attorneys for Plaintiffs


                                              By:    *s/Randi W. Kochman, Esq.*
                                                     Randi W. Kochman, Esq.
                                                     Adam J. Sklar, Esq.
                                                     900 Third Avenue, 16th floor
                                                     New York, NY 10022-4728
                                                     (212) 752-8000

22